And we'll turn to the day count. Mr. Williams. Good morning, Your Honor. How are you? This case raises an interesting question about how objections to sentencing guideline enhancements are handled in the trial courts. Since the early 90s, we've been using this procedure in the District of Vermont, and I think that comports with the training that we've been receiving from the Sentencing Commission and the United States Probation Office. The probation officer provides a draft PSR to the prosecution and to the defense. We raise objections, if there are any, in the pre-sentence report to the probation officer in writing. If we can't resolve those objections at a settlement conference, the probation officer notes our objection in the final PSR. And if a sentencing enhancement issue is being raised, then the court holds a hearing on whatever objection we had. And in this case, it was the dangerous weapon possession enhancement. And we went through that procedure. As you know, the pre-sentence report referred to four pieces of evidence suggesting that my client should have known that someone in the conspiracy had possession of a dangerous weapon. The probation officer refers to firearms found in two apartments, text messages, and oral communications intercepted in wiretap orders, and a bullet that was found in a vehicle that my client was driving here in New York City. The prosecution, both in its sentencing memorandum and in the trial court, referred to only two of those four pieces of evidence to prove its case, as it's required to, that my client should have reasonably known that someone in the conspiracy possessed a dangerous weapon. They specifically said that a firearm that was possessed by a former co-conspirator, a Mr. Perry, should not be considered because he had left the conspiracy by the time he apparently confronted my client and his co-defendant, Mr. Cargo, with a gun. The parties agreed, and the court agreed, that we weren't going to consider the oral communications because there was a substantial issue about whether or not those oral communications could have been used at the sentencing hearing. So we're left with the text message and a gun found in a safe in an apartment by Sherry Loso. And Sherry Loso simply told the police that she had given keys to the safe to one person, didn't know what was in the safe, and thought that one of three people may have put something in the safe, but she wasn't sure. That was the gun that was found in the safe. And that's what the government proceeded on. That was the evidence at the sentencing hearing. There was no mention of a knife, as in the Cargo case. There was no mention of houses in New York or what other people said. And we made both specific and a general objection to any reference to firearms in the pre-sentence report. And what Judge Rice did was she went beyond what the prosecution was relying on and referred to a number of statements that had been made to police investigators over the course of their investigation related to firearms, most of which was potential acquisitions, though none actually went forward. I think that it was a violation of my client's right to due process for Judge Rice to refer to information objected to facts that the prosecution had not relied on in its presentation. And that's where we are. I've been doing this for a long time. I've done dozens of hearings related to sentencing enhancements, whether it's the amount of the loss, the number of weapons, the number of aliens smuggled, gun enhancements, weapons enhancements. But I've never run across a case where the court took it upon itself to look to evidence that the government was not relying on. And I'm not sure how to proceed in the future. Let me ask you, Mr. Williams, aren't we talking about material in the pre-sentence report, right? Yes, we are. And that pre-sentence report was made available to you and to the government's counsel, right? Correct, yes. And to the defendant? Yes. Yes, and I went over it with them. So it's all there. And all of that material in the pre-sentence report is before the district court. Now, what you're saying, which I can sympathize with, I mean, the idea that our current sentencing regime gives the district court unlimited access, apparently, to information before it, which it can find by preponderance of the evidence. And it leads to extraordinary results in some cases. We know that the Supreme Court seemed not to have been aware of the fact that the regime of sentencing included sentencing people for offenses of which they were acquitted. So if we can go that far, or if we are directed to go that far, permitting a sentencing judge to impose a sentence which is based in part on acquitted conduct, here we have a pre-sentence report which has a high degree of, what shall we call it, authenticity or propriety, a good faith effort by the pre-sentence report to present information. You could have pursued this, or it could have been pursued, right, before Judge Rice? Were you prevented from objecting or asking for further hearings on the matters at issue? No, we weren't. Again, as I understood the procedure, and I think it's in this circuit's case law, that when material is objected to that supports either an enhancement or maybe even a safety valve or a downward departure, whatever, the party proposing the enhancement or the departure has the burden to prove it. And in this case, it's the government because it's a sentencing enhancement. And I made specific objections to the paragraphs that contain the information that the government and the probation officer were relying on for the weapons enhancement. But co-counsel— What happened then? Well, then Judge Rice did this. So you're asking me to exclude evidence of firearm, but there are unobjected paragraphs in the pre-sentence report that contain firearms linked to your client. Those are the information that's in my brief that they relied on. But co-counsel then told Judge Rice, First, as the Court's aware, I think our objection to the firearm enhancement covered any assertion that my client actively or constructively possessed. So there was specific objections to what the government was relying on, and there was a general objection to all of this other sort of static that was out there about trying to obtain weapons. What happened then? Well, then the prosecution told the judge, Look, we're not relying on this gun that was found in that New York house. We're not relying on the oral communications. We're not relying on the weapon that Dominique Perry had. We're relying on the text messages which talk about trying to acquire a gun and the gun that was found in the safe. And then Judge Rice, in her findings, went and referred to all of the other static that was out there that we had objected to, but the government wasn't relying on. And what we really need from you is some guidance about how these, you know, as you say, it's really important because, in this case, my client is out of luck with RDAP. He can't get a year off. But it could significantly affect guidelines in other cases where there are significant enhancements in child pornography. I mean, you just look at the enhancements and you're up to 280 months before you know it. You've got to give us some guidance about what happens in the district court because now it's sort of general. This is what happens. We've been trained. And what we're asking for is something to let us know what we can expect and what we need to do. And that's why I'm here today. Thank you. Of course, at the end of the day, Judge Rice, under the law promulgated by the Supreme Court, this is all by way of prelude, right? She can always exercise her discretion, in effect, taking all of this into account and then exercise her discretion. Right? Yes and no. I think there are two things. Sentencing generally, the judge has discretion to impose a sentence that that particular judge thinks is appropriate. But with regard to these guideline enhancements, there's supposed to be a hearing, burden of proof, et cetera. And what at least I'm looking for, and I'm sure my colleagues who practice federal criminal law are looking for, is something from this court saying this is what you should expect when you have an objection to an enhancement. Thank you very much. I appreciate it. Thank you, Your Honors. We appreciate your argument. We have Mr. Boshia. Is that how you pronounce it? Boshia, Your Honor. Boshia. Good morning. May it please the Court. John Boshia on behalf of the United States on this appeal. The district court correctly applied the dangerous weapon enhancement to both defendants DeLima and Cargo in this case. The defendants were partners in a leadership role in a lengthy drug conspiracy that involved substantial quantities of drugs and more than a dozen co-conspirators. I wanted to address Mr. Williams' concerns directly. Sure. So one thing at the outset . . . We're all familiar with the background. Sure. We've read your briefs. So one thing to note at the outset about the judge's discretion on this, both of these defendants accepted plea agreements under Rule 11C1C, binding plea agreements, which the district court indicated that it would accept. So in this case, at the outset of the sentencing hearing, before hearing any arguments about dangerous weapons or the like, the district court had already suggested it would be accepting the plea agreements. As for the arguments about what can be objected to in the PSR and the process . . . There was no waiver of appeal, right? There was no appellate waiver in this case for either defendant. As far as the process that Mr. Williams addressed, that process was followed here. The parties were given the PSR to consider. Parties were . . . the defendants were permitted to raise objections to the PSR. Those objections were taken up at sentencing in a lengthy sentencing transcript for both defendants. The district court heard those objections and resolved them and found that there were numerous unobjected to aspects of the PSR that implicated a gun or dangerous weapons. In particular, the weapon found at the Loso residence. And Loso was a co-conspirator, a hostess in Vermont who hosted numerous co-conspirators in this lengthy drug conspiracy. A firearm was found in a safe next to drugs that were used or that were attributable to this conspiracy. And there's no argument that those drugs were not part of this conspiracy. In that very same safe, a gun was found there. And as this court has found in numerous cases, in the Pellegrini case, in the Soto case, the proximity of drugs and guns together supports the dangerous weapon enhancement. In addition to that, there were unobjected to aspects of the PSR, indicating that both defendants had attempted to trade or attempted to arrange . . . One, as for Defendant DeLima, he attempted to purchase an AK-47 and a .22 caliber firearm. That's in the PSR, it's paragraph 126 of the DeLima PSR. It's text messages in which the defendant himself indicates, I'll take that, referring to an AK-47. So at the very least, it was reasonably foreseeable to that defendant that this offense could potentially involve firearms. And similarly with Defendant Cargo, he attempted to trade drugs for a gun. And when his intermediary in that transaction reported to him that the gun was not produced, Defendant Cargo said that he would handle it. Again, evidencing that it was reasonably foreseeable to Defendant Cargo that the conspiracy could involve firearms. It's also important for this court to understand that this was a lengthy conspiracy with substantial quantities of drugs over a kilogram of heroin. And as this court has said in the Batista case, to substantial dealers in narcotics, firearms are tools of the trade. So it should have been reasonably foreseeable to these leaders and organizers of a large-scale drug trafficking conspiracy that dangerous weapons could be part of it. And that information is corroborated by numerous statements of co-conspirators. Again, in unobjected to paragraphs of the PSR, some of those co-conspirators saw other co-conspirators with firearms, heard about attempts to arrange other transactions for drugs. So again, this was a lengthy conspiracy, full of corroboration for the idea that co-conspirators possessed dangerous weapons. And importantly, it was a conspiracy that was closely managed by Defendants DeLima and Cargo. They routinely asked the people they managed for counts of how much drugs were being sold, counts of money. They gave them money for meals when they traveled to Vermont to sell drugs. So this was a closely managed conspiracy in which multiple co-conspirators possessed dangerous weapons. And finally, just one other aspect is that Defendant Cargo possessed a knife, which should be considered a dangerous weapon under this guideline as well. It's capable of causing substantial bodily injury or death. A knife. Pardon me, Your Honor. Defendant Cargo possessed a knife. That was an unobjected to statement in the PSR. And this Court could affirm the dangerous weapon enhancement on that basis alone. So for those reasons, lest the Court has any further questions, I will rest on our briefs at this point. Thank you very much. Thank you. Mr. Williams, you've not reserved time, but if you want one minute, you can have it. If there's something that... Sorry. Everything that Mr. Boccia said was accurate, but it's the same problem. They decide what evidence to rely on, and then we're left with the static that we did object to, sort of generally, not specifically, but we'd like to have some guidance from the Court about how to handle these. We would appreciate it. We appreciate your argument, and we appreciate your voyage from Vermont, and thank you for coming down. Yes, thank you very much. We reserve the decision.